**UNITED STATES of America,**

v.

**Cecil FERGUSON and Edward Joseph, Defendants.**

**No. S 82 Cr. 312.**

United States District Court, S.D. New York.

Nov. 15, 1982.

See also, D.C., 548 F.Supp. 1390.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for U.S.; Stacey J. Moritz, Robert S. Litt, Asst. U.S. Attys., New York City, of counsel.

William Mogulescu, New York City, for defendant Joseph.

Jesse Berman, New York City, for defendant Ferguson.

OPINION

EDWARD WEINFELD, District Judge.

The movant defendants are named together with others in an indictment which charges that they were engaged in a racketeering conspiracy which, among other matters, involved a series of armed robberies and murders, including what is now re-

ferred to as the Brinks robbery at Nanuet, New York, during which a Brinks guard was killed and thereafter during a getaway attempt two state troopers were also killed.[1] Other counts of the indictment charge the substantive crime of actually conducting the affairs of a criminal enterprise through a pattern of racketeering activity (18 U.S.C., sections 1962(c) and 2); robbery of a federally insured bank (18 U.S.C., section 2113(a)); and one count charges murder during the course of a bank robbery (18 U.S.C., sections 2113(d), (e) and 2).

This Court previously denied two separate motions for disqualification made by the defendants. One was based upon the ground that since this Court had granted one of the seven wiretap applications at issue, it would, on the defendants' motion to suppress the evidence derived by reason thereof, be passing upon the validity of its own previously approved order. The other was upon the ground that a former law clerk, Robert S. Litt, an Assistant United States Attorney, had recently been assigned to assist in the pending prosecution.[2] The Court is now presented with a third application for disqualification.

Following the denial of the first two motions, there remained for consideration a series of substantive motions which were scheduled for argument.[3] One of these sought dismissal of the indictment for what the defendants termed "government abuse of the grand jury." Among other matters, the defendants charged that the prosecution had withheld from the grand jury information that an informant had recanted an extensive written statement incrimina-

ting these defendants and others. The informant is referred to as CS 1, whose real identity the defendants say is Samuel Brown ("Brown"), an alleged participant in one or more of the crimes charged against the defendants. Brown claimed the statement as well as his cooperation with the federal authorities had been the result of physical beatings, threats upon his life and other coercive conduct by agents of the Federal Bureau of Investigation ("FBI"). The basic contention with respect to the grand jury abuse charge was that although the grand jury had been informed of Brown's incriminating statements it was not advised of their repudiation.[4] Brown's reliability is a major item in support of the defendants' separate motion to suppress evidence obtained as a result of wiretap orders and search warrants.

The prosecution, in response to the motion to dismiss for "grand jury abuse," submitted to the Court in camera a portion of the grand jury testimony. The defendants' counsel were advised of the submission but were not informed what testimony had been submitted or of its nature or substance. The in camera submission included the grand jury testimony of Mark F. Pomerantz ("Pomerantz"), then an Assistant United States Attorney. He had served as a law clerk to this Court from 1975–76.

In preparation for hearing argument of the outstanding motions, the Court read a multitude of affidavits submitted on behalf of the prosecution and defense and extensive exhibits numbering hundreds of pages and, in the process, came across the testimony of Pomerantz. The Court thereupon

---

1. These are the subject of a pending state indictment in which the movants herein are not named as defendants.

2. *United States v. Ferguson and Joseph,* No. S 82 Cr. 312 (S.D.N.Y. Oct. 26, 1982).

3. These included motions (1) to suppress evidence derived from authorized wiretaps; (2) to suppress pretrial and prospective trial identification; (3) to suppress evidence of searches of 4 separate apartments; (4) to suppress evidence seized from the person of one of the defendants at the time of his arrest; (5) to

dismiss certain counts in the indictment; (6) to have the government elect between different counts in the indictment; (7) for disclosure of lineup results; (8) for disclosure of hair sample analysis results; (9) to produce a copy of the transcript of testimony of a pretrial hearing being conducted in the state court proceeding (*see* note 1, *supra*), as well as others.

4. A further charge was made that Brown was "crazy," as was another informant, and that such information had not been revealed to the grand jury.

called an in camera session attended by the two Assistant United States Attorneys in charge of this matter, which took place Friday morning, November 5, 1982, three days before the pending motions were to be argued.[5] The Court suggested that as a matter of fairness the United States Attorney either inform the defense counsel that Pomerantz had testified before the grand jury and the nature of his testimony or release it in its entirety. Later that day the United States Attorney decided to make the entire transcript of Pomerantz's testimony available and it was forthwith delivered to the defense.

On Monday morning, November 8, the return date for the argument of the outstanding motions, defendants made the third and current application for recusal based upon the nature of Pomerantz's testimony and his relationship to this Court. The prosecution, in opposing the application, stressed that the sole and only purpose for which the testimony had been submitted was to rebut the charge of grand jury abuse for failure to disclose Brown's repudiation of his prior incriminating statements and of his refusal to continue to cooperate with the prosecution. The government stressed that the testimony had not been submitted in opposition to the separate motions to suppress evidence. In fact, it appears that the grand jury had been informed of Brown's change by Pomerantz. However, the defendants contend, and correctly so, that Pomerantz went much beyond informing the grand jury of Brown's recantation and of his refusal of further cooperation with the federal authorities. In his opening statement Pomerantz told the grand jury that he had met Brown for the first time only the evening before together with Jane Parver, an Assistant United States Attorney, and Special Agents Robert Cordier and Kenneth Maxwell of the FBI; that Brown greeted the agents in a friendly manner; that Brown stated he remained willing to cooperate with the federal authorities in the ongoing investigation and that he discussed his previous relationship with the agents

and said he had no complaints about the way he had been treated by them; that Brown referred to them as "great" or "wonderful guys" and at one point he hugged one of the agents and indicated that everything he had ever told them was "the hundred per cent truth"; that his attitude was one of friendship with the agents, and that Brown also stated that he had willingly cooperated with the FBI agents.

Pomerantz further testified that Brown acknowledged that his handwritten statement, previously referred to, was "the truth and remained the truth" and that he was prepared to continue to cooperate with the federal authorities, whereupon arrangements were made to meet the following morning. However, that morning Brown refused to meet with the prosecution authorities and a letter was delivered from him in which he stated he no longer wanted to cooperate with the government authorities or speak to its representatives. On the same morning, in a pending habeas corpus proceeding brought on behalf of Brown, attorneys representing him made similar statements. The grand jury minutes of Pomerantz's testimony establish that he explicitly informed the grand jury of Brown's change of heart; thus, the defendants' contention that the information was withheld is without factual support. Accordingly, the prosecution contends that since Pomerantz's testimony was submitted solely on the grand jury abuse issue, which upon this record has not been challenged, his credibility is not involved and inquiry should end. The prosecution therefore argues that Pomerantz's relationship to this Court is not a ground for recusal. But the defense contends that Pomerantz's testimony, although not offered by the prosecution in opposition to other motions, is likely to influence the Court's determination of those motions, particularly in view of the sharp and divergent contentions of the FBI agents and Brown.

The motion which seeks to suppress evidence derived as a result of seven separate wiretap orders covering an extensive period may be said to be the major one advanced

5. The record is sealed and subject to opening upon Court order.

by the defendants and is of prime importance to their interests. Essentially, it rests upon Brown's claim that his written statement, a thirteen-page document, was copied by him from one previously prepared by FBI Agents Cordier and Maxwell and was signed by him under threats of physical violence, beatings and other coercive conduct by the FBI agents. The defendants contend that the prosecution in applying for the wiretap orders failed to disclose the alleged coercive conduct to the Court; failed to inform the Court that Brown was not a reliable witness and thus that in fact there was no probable cause to justify the wiretap orders, and accordingly all evidence derived thereunder should be suppressed.[6] The FBI agents vehemently deny Brown's charges; in addition, the prosecution points to inherent inconsistencies with respect to his allegations and notes that during the course of a state habeas corpus proceeding where he made accusations of misconduct by *state* authorities, neither he nor his attorney ever made any complaint of misconduct by the federal authorities.

What this points up is a sharp issue of credibility between the FBI agents and Brown, the resolution of which, whether upon the existing record or upon a hearing if one is required, will in effect determine the motion to suppress the wiretap evidence as well as several other related motions. Pomerantz is not involved in that controversy, had no direct knowledge of the events then at issue, and the government does not intend to call him as a witness if there is a hearing and so his credibility is not involved with respect to those motions. Moreover, the government urges that his grand jury testimony not be considered on the substantive issues raised by defendants' suppress motion since, as already noted, it was offered solely on the defendants' separate motion with respect to "grand jury abuse."

There is sufficient matter before the Court consisting of prosecution and defense affidavits and exhibits, exclusive of Pomerantz's grand jury testimony, to resolve the disputed issues under the wiretap suppression motions. Further, the Court does not doubt that it can bring to bear a disciplined mind so that the determination of that motion and any related motion will be made solely upon the evidence exclusive of Pomerantz's testimony. But is that the answer? More is required. The defendants express great concern of a spillover effect of Pomerantz's testimony of Brown's admissions which so strongly negates his present position and supports the FBI agents' version that his statements incriminating himself, the defendants and others of several crimes charged against him were voluntary and free of any coercion. The reality is that Pomerantz's testimony not only seriously challenges, if indeed it does not destroy, Brown's contention that his cooperation had been coerced.

The defendants contend that despite the Court's announced exclusion of Pomerantz's testimony, since the Court is aware of its content, it will have a subtle if not sublimal influence not only in the consideration of the wiretap suppression motion, but also upon their numerous other motions where Brown's claims are at issue. The Court does not doubt that in fact it can hold the "balance nice, clear and true"[7] between the prosecution and the defense and decide every motion solely upon the facts and the law. But the issue on the defendants' motion for disqualification is not whether the Court can be impartial in fact; there are other matters to be considered.

Despite the Court's subjective view that all matters can be resolved impartially, a judge has an independent duty to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."[8] The issue then is not the

---

**6.** All the wiretap orders except one were issued by Judge Haight; one was signed by this Court.

**7.** *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (quoting *Tumey v.*

*Ohio,* 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927).

**8.** 28 U.S.C. § 455(a):

Court's own introspective capacity to sit in fair and honest judgment with respect to the controverted issues, but whether a reasonable member of the public at large, aware of all the facts, might fairly question the Court's impartiality. This is an objective standard and "where the question is close, the judge whose impartiality might reasonably be questioned must recuse himself from the trial." [9] My relationship to Pomerantz is so intimate and my esteem for him so high, as it is for all my many clerks through the years, that the "average person on the street" [10] might reasonably conclude that no matter how strongly the Court states that Pomerantz's testimony will not enter into its judgment, nonetheless, in some imperceptible manner his testimony will intrude itself and be considered with respect to the suppression motions. This situation is quite unlike the prior motion to disqualify because a former law clerk had been assigned to prosecute the case. The mere fact of close relationship did not require disqualification. In this instance, however, credibility is a vital issue.

The Court concludes that under all the circumstances here presented it is required to disqualify itself on the ground that its impartiality might reasonably be questioned. It does so with reluctance since many long days and hours have been expended in studying the voluminous affidavits, exhibits and briefs submitted by the parties; in addition, this Court remains of the school that adheres to the "duty to sit" [11] concept, notwithstanding which the case must now be reassigned to one of my colleagues, all of whom are heavily burdened with other matters. But the Court's reluctance and its "duty to sit" concept must yield to a higher authority—the majesty of the law. A cardinal principle of our system of justice is that not only must there be the reality of a fair trial and impartiality in accordance with due process, but also the appearance of a fair trial and impartiality.[12] In sum, in the words of Mr. Justice Frankfurter, "justice must satisfy the appearance of justice." [13]

The defendants' motion for the Court to disqualify itself is granted. The case is referred to the Assignment Committee for transfer by lot pursuant to the Individual Assignment System rule of this Court.[14]

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

9. *Roberts v. Bailar,* 625 F.2d 125, 129 (6th Cir. 1980). *See id.* at n. 17; *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1111 (5th Cir.1980); *United States v. Gigax,* 605 F.2d 507, 511 (10th Cir.1979) (and cases cited therein).

10. *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1111 (5th Cir.1980).

11. *Wolfson v. Palmieri,* 396 F.2d 121, 124 (2d Cir.1968); *Rosen v. Sugarman,* 357 F.2d 794, 797–98 (2d Cir.1966); *United States v. Corr,* 434 F.Supp. 408, 412 (S.D.N.Y.1977). *See also Laird v. Tatum,* 409 U.S. 824, 837, 93 S.Ct. 7,

14, 34 L.Ed.2d 50 (1972) (memorandum of Rehnquist, J.).

12. *See Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242–43, 100 S.Ct. 1610, 1613–1614, 64 L.Ed.2d 182 (1980); *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). *See also Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974).

13. *Offutt v. United States,* 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954).

14. *See* Rules for the Division of Business Among District Judges of the Southern District of New York, Rule 18 (1982).