Nelson Bunker HUNT, W. Herbert Hunt
and Lamar Hunt, Plaintiffs,

v.

MOBIL OIL CORPORATION; Texaco Inc.; Standard Oil Company of California; The British Petroleum Company, Ltd.; Shell Petroleum Company, Ltd.; Exxon Corporation; Gulf Oil Corporation; Occidental Petroleum Corporation; Grace Petroleum Corporation and Gelsenberg A.G., Defendants.

No. 75 Civ. 1160.

United States District Court,
S.D. New York.

Feb. 15, 1983.

Philip J. Hirschkop, Lewis H. Goldfarb, Hirschkop & Grad, P.C., Alexandria, Va., Robert Weiner, Theodore Steingut, Berger, Steingut, Weiner, Fox & Stern, New York City, for plaintiffs.

Robert M. Osgood, William H. Knull, III, Sullivan & Cromwell, New York City, for defendant Exxon Corp.

Bruce A. Hecker, Joseph Ferraro, Shea & Gould, New York City, for defendant The British Petroleum Co., Ltd.

A. Randall Friday, Mark A. Brand, Gulf Oil Corporation, Houston, Tex., for defendant Gulf Oil Corp.

Edward F. Howrey, P.C., A. Duncan Whitaker, P.C., Mark D. Wegener, David C. Eddy, Howrey & Simon, Washington, D.C., N.E. Maryan, Jr., Mobil Oil Corporation, New York City, for defendant Mobil Oil Corp.

John R. Hupper, Douglas D. Broadwater, Cravath, Swaine & Moore, Thomas J. Sweeney, III, Davis, Markel, Dwyer & Edwards, New York City, for defendant The Shell Petroleum Co., Ltd.

Gordon B. Spivack, David H. Marks, Carolyn T. Ellis, James R. Eiszner, Jr., Lord, Day & Lord, New York City, Thomas E. Haven, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant Standard Oil Co. of California.

Charles F. Kazlauskas, Jr., Lawrence R. Jerz, Elizabeth P. Smith, Texaco Inc., White

Plains, N.Y., Milton J. Schubin, Randolph S. Sherman, Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Texaco Inc.

Louis Nizer, Robert R. Salman, Janet P. Kane, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant Occidental Petroleum Corp.

## OPINION

EDWARD WEINFELD, District Judge.

The parties to this action have been engaged in litigation for eight years, and although a final judgment after a trial was entered as to some claims in November 1978, the end of the controversy is nowhere in sight. The action was commenced in 1975 by plaintiffs, Nelson Bunker Hunt, W. Herbert Hunt and Lamar Hunt ("the Hunts"), against the world's seven largest oil producing companies ("the majors"), Occidental Petroleum Corporation ("Occidental"), an independent oil producer, and other independents. Familiarity is assumed with the pertinent rulings by this Court prior to and after trial.[1]

The Hunts' complaint contained four separate claims. The first charged the defendants with a per se violation of the antitrust laws based upon a preexisting customer clause as defined in the Libyan Producers Agreement ("LPA"); the second, with conspiracy to withhold from plaintiffs millions of barrels of crude oil to which they were entitled under the LPA; the third, with conspiracy to eliminate and destroy the

plaintiffs as a competitor by preventing them from reaching an agreement with the Libyan Government, which ultimately led to the Hunts' nationalization by the Libyan Government and their elimination from competition as a producer of Libyan oil; and the fourth, with breach of contract of the LPA because of failure to supply the Hunts with ninety million barrels of oil as required by the terms of the LPA. Prior to trial, the Court dismissed plaintiffs' third claim under the Act of State doctrine.[2] It also stayed the fourth claim, the breach of contract claim, which was subject to arbitration under the LPA, pending a trial of the plaintiffs' first and second claims.[3]

Following extensive pretrial discovery, the case went to trial against only the seven majors and Occidental on plaintiffs' first and second claims and the defendants' counterclaims for restitution and recision. After an eight-week trial, with a record of more than 7,000 pages, and hundreds of exhibits, this Court filed its decision in October of 1978, dismissing the Hunts' claims upon the merits, observing that "whatever claims plaintiffs have, essentially they are for breaches of contract ... matters to be decided in an arbitration proceeding ... provided for under the LPA."[4] The judgment was entered November 2, 1978, wherein the Court made a determination pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that there was no just reason for delay and, based upon its findings of fact and conclusions of law, dismissed plaintiffs' first and second claims

1. *See, e.g., Hunt v. Mobil Oil Corp.,* 410 F.Supp. 10 (S.D.N.Y.1975), *aff'd,* 550 F.2d 68 (2d Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977) (denying motion to dismiss claims one and two of plaintiffs' complaint; dismissing the third claim on the act of state doctrine); 410 F.Supp. 27 (S.D.N.Y.1976) (denying motion for certification under 28 U.S.C. § 1292(b) as to Court's refusal to dismiss claims one and two); 444 F.Supp. 68 (S.D.N.Y. 1977) (denying defendants' motion to vacate stay of arbitration as to the fourth claim and to stay judicial proceedings on claims one and two until completion of arbitration); memorandum (S.D.N.Y. Dec. 5, 1977) (denying Exxon's motion for partial summary judgment); order (S.D.N.Y. December 5, 1977) (granting motion

for separate trials on issues of liability and damages); memorandum (S.D.N.Y. January 11, 1978 (denying Texaco's motion for partial summary judgment on the second claim); 465 F.Supp. 195 (S.D.N.Y.1978), *aff'd on opinion below,* 610 F.2d 806 (2d Cir.1979) (Court's findings of fact and conclusions of law dismissing the plaintiffs' first and second claims, and the defendants' counterclaims).

2. 410 F.Supp. 10 (S.D.N.Y.1975), *aff'd,* 550 F.2d 68 (2d Cir.), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977).

3. 410 F.Supp. at 25–27.

4. 465 F.Supp. at 235.

upon the merits and the defendants' counterclaims for failure of proof. The judgment, in its third decretal provision, "ORDERED and ADJUDGED . . .

that the plaintiffs' fourth claim, the breach of contract claim, is subject to arbitration under the terms of the Libyan Producers' Agreement, and plaintiffs' claims thereunder and defendants' defenses thereto, and counterclaims which were not resolved in the instant action may be presented in said arbitration, and the stay of the arbitration previously granted pending determination of the antitrust issues is hereby vacated.

Following the entry of the aforesaid judgment, this Court heard nothing further of the matter until more than four years later when the majors and Occidental, by a motion dated December 1, 1982, and returnable December 14, moved for an order (1) enjoining the Hunts from commencing or prosecuting any claim or action that interferes with the continuation of the arbitration claims arising out of the LPA then pending before the American Arbitration Association, and (2) directing them to continue with the arbitration in accordance with the terms of the agreement and the prior orders of this Court. Thereafter the Hunts commenced a proceeding in the Supreme Court of the State of New York against the majors, Occidental, other independents who were parties to the pending arbitration and the American Arbitration Association. In that proceeding, the Hunts seek a judgment vacating an alleged final award by the Panel upon various grounds of alleged "misconduct" of the arbitrators, discussed hereafter. Thereupon, the defendants extended the scope of their motion to specifically enjoin the Hunts from proceeding with their state action. This was followed by a motion by the Hunts that this

Court recuse itself pursuant to 28 U.S.C. § 455.

■ We first consider the defendants' motion that the Hunts be directed to continue with the arbitration and that they be enjoined from proceeding with their pending state action. Preliminarily, the Hunts challenge this Court's jurisdiction because (1) it did not order arbitration, and (2) there are no federal claims in this action remaining before the Court.

The essence of the lack of jurisdiction argument is that this Court did not "expressly" or "specifically" order "that the parties proceed to arbitration or that any judgment upon the arbitration award must be entered in this Court";[5] that the judgment merely "stated" that the plaintiffs' fourth claim was subject to arbitration. This contention is sheer sophistry; it is not only a play on words, but disregards the determination made under Rule 54(b), as well as the history of the events that led to the lifting of the stay so that the arbitration could proceed as to plaintiffs' fourth claim and the defendants' counterclaims thereto, while the parties pursued their respective appeals.

A manifest purpose of the entry of judgment under Rule 54(b)[6] and the ordering and adjudging of paragraph 3 was retention of jurisdiction over the fourth claim so that upon rendition of the final award by the arbitrators the parties could, as provided for by the United States Arbitration Act[7], move to confirm, vacate, modify or correct a final award. If that was not the purpose, the fourth claim should have been dismissed. To accept Hunts' position that the Court did not "expressly" and "specifically" direct the parties to proceed to arbitration would mean that the Court's determination under Rule 54(b), which permitted the entry

---

**5.** Plaintiffs' Memorandum in Opposition to Motion to Compel at 3–4; Tr. Oral Arg. at 30–31, 36–37 and *passim*.

**6.** Fed.R.Civ.P. 54(b) permits the "entry of a final judgment as to one or more but fewer than all the claims" presented for relief in an action.

The November 1978 judgment was the second Rule 54(b) judgment entered in this action. The first permitted immediate appeal by the Court's dismissal of the third claim on the Act of State doctrine.

**7.** 9 U.S.C. §§ 9–11.

of judgment under claims 1 and 2 was a futile, unnecessary and meaningless act.[8]

Moreover, the entire history of the litigation leaves no room to doubt that the breach of contract claim remained subject to the Court's jurisdiction pending the determination of the arbitration claims of plaintiffs and the defendants' counterclaims thereto. As early as November, 1975, the issue of the arbitrability of the fourth claim came to the fore. At that time, defendants had moved to stay all proceedings with respect to that claim pending arbitration and Texaco had served a demand for arbitration. Thereupon plaintiffs cross-moved to stay Texaco's demand for immediate arbitration pending the Court's determination of the remaining antitrust claims. The Court then observed that the arbitrability of the fourth claim is "beyond dispute"[9] and noted that "the breach of contract and antitrust claims are so inextricably interrelated, one with the other, that it would not be easy, in the light of the parties' contentions, for the arbitrators to avoid wandering into the thicket of complex antitrust issues."[10] Thus, the Court granted plaintiffs' cross-motion for a stay of arbitration on the breach of contract claim. Additionally, it granted the defendants' motion "for a stay of proceedings of the fourth claim in this action ... except insofar as the breach of contract claim alleged therein is relevant and pertinent under the first and second antitrust claims."[11] Thus, the Court not only stayed the arbitration proceeding pending the Court's disposition of the antitrust claims, but it also stayed its own proceedings in this action on the breach of contract claim pending the completion of the arbitration. It is significant that the Rule 54(b) judgment, entered in 1978, did not lift the Court's stay of its own proceedings on the breach of contract claim and, therefore, that stay continues in force. Thus, the Court holds that pursuant to the judgment entered on November 2, 1978, it retained and continues to retain jurisdiction over the parties and the fourth claim as set forth therein.

◼ The plaintiffs next urge that the Federal Anti-Injunction Act, 28 U.S.C., section 2283, precludes this Court from granting an injunction restraining plaintiffs from proceeding with their state action. That Act contains an exception which authorizes a federal court to stay proceedings in a state court "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[12] From what has already been set forth, it is abundantly clear that this case comes within the exception and that the Court is empowered to enjoin the Hunts' state court proceeding as necessary to effectuate the judgment entered in this action.[13]

◼ Finally, the Hunts alternatively urge that the Court should as a matter of discretion decline jurisdiction under the authority of *United Mine Workers v. Gibbs*[14]

---

8. Judicial acts should not be construed in such a manner as to render them meaningless or futile. *See United States v. Denmar Transportation & Leasing Co.,* 444 U.S. 4, 6, 100 S.Ct. 16, 17, 62 L.Ed. 5 (1979); *Donovan v. City of Dallas,* 377 U.S. 408, 418, 84 S.Ct. 1579, 1585, 12 L.Ed.2d 409 (1964) (Harlan, J., dissenting).

9. 410 F.Supp. at 25.

10. 410 F.Supp. at 26.

11. 410 F.Supp. at 27.

12. 28 U.S.C. § 2283 provides that "[a] Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

13. *See In re Mercury Constr. Corp.,* 656 F.2d 933, 941 (4th Cir.1981) (en banc); *Bache Halsey Stuart Shields, Inc. v. Moebius,* 531 F.Supp. 75, 77 (E.D.Wis.1982); *Blount Bros. Corp. v. M.K. Steel, Inc.,* 524 F.Supp. 1037, 1039 (N.D. Ala.1981); *Novik & Co. v. Jerry Mann, Inc.,* 497 F.Supp. 447 (S.D.N.Y.1980); *Avila Group, Inc. v. Norma J. of California,* 426 F.Supp. 537 (S.D.N.Y.1977); *Commonwealth Edison Co. v. Gulf Oil Corp.,* 400 F.Supp. 888, 890 (N.D.Ill. 1975), *aff'd,* 541 F.2d 1263 (7th Cir.1976); *Network Cinema Corp. v. Glassburn,* 357 F.Supp. 169, 172 (S.D.N.Y.1973) (quoting *Necchi Sewing Machine Sales Corp. v. Carl,* 260 F.Supp. 665, 669 (S.D.N.Y.1966).

14. 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

since all federal claims (Hunts' claims Nos. 1 and 2 and the defendants' counterclaims thereto) supporting the pendent breach of contract claim (Hunts' fourth claim) have been dismissed under the judgment. In *Gibbs,* Mr. Justice Brennan noted that if the federal claims that provided the only jurisdictional basis for the pendent state claims are dismissed before trial, "the state claims should be dismissed as well."[15] Here, however, the federal claims were not dismissed until after extensive pretrial discovery, considerable motion activity and an eight-week trial. To suggest, as plaintiffs do, that considerations of "judicial economy, convenience and fairness to litigants"[16] warrant that the Court not exercise its jurisdiction and dismiss the breach of contract claim in favor of the Hunts' proceeding in the state court is to turn these concerns topsy turvy. The considerable familiarity of this Court with the complex issues involved in the case throughout its history not only justifies but requires that this Court exercise its jurisdiction.[17] Thus we consider defendants' motions on the merits.

█ Since the entry of judgment the parties have been engaged over a four-year period in one aspect or another of the arbitration. More than two years was consumed by a screening process before they finally agreed on May 22, 1981, upon three arbitrators to constitute the Panel ("Panel"). The next six months were consumed with preliminary matters, including the establishment of ground rules governing the order of presentation of the parties' claims, which resulted in a three-phase format.

Under Phase I the Hunts were to offer proof in support of their claims against the majors and Occidental. Thereafter, the majors and Occidental were to follow with proof in support of their claims against the Hunts. Phase II was to be devoted to the claims of parties to the arbitration other than the Hunts. Phase III was to be devoted to damages.

Phase I began in December 1981, with the Hunts' presentation in support of their claims. The evidence consisted of more than 1,300 documents, portions of trial testimony before this Court and four affidavits. The Hunts rested their case in June of 1982. Thereafter, before offering evidence to sustain their own claims, the majors and Occidental filed motions to dismiss some but not all of the Hunts' claims.

Prior to the date scheduled for oral argument on the motions to dismiss, the parties were notified that one of the arbitrators had been nominated as Deputy Secretary of State of the United States, a nomination that required Senate confirmation, but in view of normal delay because of security, financial and other governmental checks, the arbitrator was free to participate in the determination of the then pending motions. After an exchange of correspondence, all parties agreed that the arbitrator should continue to serve with respect to the pending motions. Accordingly, the original Panel heard the motions over a three-day period at which the Hunts and the other parties were represented by their respective counsel. On September 5 the Panel unanimously granted several of the defendants' mo-

---

**15.** 383 U.S. at 726, 86 S.Ct. at 1139 (footnote omitted).

**16.** 383 U.S. at 726, 86 S.Ct. at 1139.

**17.** *Cf. Stamford Bd. of Educ. v. Stamford Educ. Ass'n,* 697 F.2d 70 at 72 (2d Cir.1982).
Plaintiffs also contend that the Court lacks power to grant the requested relief because necessary parties have not been joined. The basis of this argument is that there are parties to the arbitration other than those now before the Court and, because the panel's decision will affect the absent parties, they "are necessary

to any judicial proceeding involving the arbitration." Plaintiffs' Memorandum in Opposition to Motion to Compel at 7. Plaintiffs have made no showing that the absent parties are indispensible for Rule 19 purposes. *See La Vale Plaza, Inc. v. R.S. Noonan, Inc.,* 378 F.2d 569, 575 (3d Cir.1967). Significantly, there is no statement of what prejudice, if any, those parties will suffer by reason of their absence here. Moreover, it appears that the absent parties have taken positions consistent with those taken by the majors and Occidental as to matters relevant herein.

tions and dismissed some of the Hunts' claims.[18]

Following the announcement of the ruling by the Panel, the parties attempted but failed to agree upon the applicable procedure for the designation of a third arbitrator in place of the one whose resignation became effective on September 28, 1983. Thereafter, on October 14, the Hunts demanded replacement of the entire Panel with a de novo hearing on all claims, including those already decided by the Panel, although previously they, as well as all other parties, had agreed that those claims need not be reheard by the yet to be reconstituted Panel.

The basis for the demand for a de novo hearing on all claims was that each of the three arbitrators had failed to disclose actual or potential conflicts of interest. The Hunts declared that unless their position was accepted they would not proceed with the arbitration. The majors, Occidental and other parties to the arbitration disputed the validity of the charges against the arbitrators. The parties engaged in an exchange of correspondence which produced only a standstill as a result of which the defendants served the instant motion to compel the Hunts to continue with the arbitration, which was followed, as already noted, by the Hunts' institution of the state court proceeding. There, the Hunts expanded their claims for vacating the Panel's determination and charged, in addition to the Panel members' failure to disclose actual or potential conflicts of interest, that they had (1) improperly excluded during the hearings evidence tendered by the Hunts and had denied them document production, (2) applied an improper standard of proof in judging the sufficiency of their claims, and (3) that the Hunts had been denied funda-

mental fairness by the American Arbitration Association's failure to order the arbitration to begin anew.

The Hunts' charges of "misconduct" of the Panel members virtually parallels those advanced in *Michaels v. Mariforum, S.A.,*[19] recently decided by our Court of Appeals. There the petitioner challenged the panel's order of the presentation of proof, and sought an order vacating an interim award and requiring the arbitration to commence de novo before a new panel of arbitrators. The Court dismissed the petition on the ground that it was premature, holding that a court "is without authority to review the validity of arbitrators' rulings"[20] prior to the rendition of a "final" award.

Plaintiffs' attempt to avoid the controlling force of that ruling is without substance. The alleged distinction that the arbitrators here made a "final" award and thus is ripe for judicial review, whereas in *Michaels* the award was "interim," simply disregards the instant factual situation. As already noted, the arbitration was conducted in a three-phase procedure under which the Hunts proceeded first in the presentation of their claims. The Panel dismissed only a number of Hunts' claims. Yet to be heard and resolved are not only their undismissed claims, as acknowledged upon the argument of this motion,[21] but also the claims and counterclaims of the majors, Occidental and third parties, following which there still remains for determination by the arbitrators the damages to be awarded to successful parties. Clearly no final award has been made that is ripe for judicial review. As the Court of Appeals noted in *Michaels,* in order to be final,

> an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them.

---

**18.** The majors and Occidental moved to dismiss some, but not all of Hunts' claims. The Panel's rulings reserved decision on several of these motions pending further evidentiary hearings, and granted others. The principal claims dismissed included: (1) Hunts' claimed entitlement to Persian Gulf crude accruing in 1974; (2) Hunts' claim of entitlements for 1974 pursuant to ¶ 1A of the LPA; and (3) Hunts' claim for nondelivery of Persian Gulf crude by Exxon

and Persian Gulf crude and cash offered in lieu thereof by Mobil. *See* Knull Aff. Ex. 2 (Nov. 30, 1982).

**19.** 624 F.2d 411 (2d Cir.1980).

**20.** 624 F.2d at 414.

**21.** Tr. Oral Arg. at 35.

Generally, in order for a claim to be completely determined, the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages.[22]

With a portion of Hunts' claims and those of all other parties to the arbitration still open not only as to liability but as to damages, it is beyond dispute that the determinations thus far made are not final within the meaning of the United States Arbitration Act and the New York State Act. The Hunts' attempt by their state action to vacate in midstream the partial award in the pending arbitration is not only premature, but if it succeeds, it will serve to abort that proceeding. *Michaels* therefore requires that the Court grant the defendants' motion and direct that the parties continue the arbitral process. It follows that unless the Hunts are enjoined from proceeding with their state court action it will result in further delay of the already too long delayed controversy. Unless so enjoined, this litigation is well on its way to outdistance *Jarndyce v. Jarndyce*.[23]

In conclusion, we address the Hunts' motion that this Court recuse itself pursuant to 28 U.S.C., section 455(a), upon the ground that to hear and decide the defendants' motion and other matters involving plaintiffs "would create an appearance of impropriety and deny plaintiffs' fundamental fairness"[24] for reasons alleged and discussed hereafter. Preliminarily, we observe that the motion to recuse was necessarily considered and determined by this Court before it undertook analysis and disposition of the defendants' motion to compel the arbitration to proceed. We concluded that the Hunts' motion for recusal should be denied and now state the reasons therefor.

That motion centers about an essential fact—fully known to the Hunts, their counsel, Philip J. Hirschkop, Esq. ("Hirschkop"), and to all other litigants and their attorneys in this action from its inception more than eight years ago—to wit, Daniel P. Levitt, Esq. ("Levitt"), my law clerk from 1964–65, shares a close friendship with the Court. It is a relationship that commenced during his tenure here and has matured with the years and extends to the members of his family. It is the same type of friendship the Court has proudly shared with other clerks through the years of its judicial service.

Levitt and his law firm, Kramer, Levin, Nessen, Kamin and Soll,[25] served as lead counsel throughout this litigation. He was retained to and commenced the action, was active in the pretrial discovery stage, was chief counsel at the trial, served as appellate counsel and continued to serve as chief counsel for an extended period in the arbitration. Hirschkop, Hunts' general counsel, acted as co-counsel with Levitt in the trial and in the arbitration proceeding and was an active participant in each. It now appears that in November 1981, while the arbitration was in process, the Hunts and Levitt came to the parting of ways and Levitt's services were terminated. This was followed by litigation in which Levitt and his firm sued the Hunts to recover fees for their services, and the Hunts in turn sought to recover possession of documents retained by the law firm. Their dispute was settled and the actions discontinued. But for the information submitted on this motion by the Hunts and the defendants this Court had no knowledge of any of the lawsuits or the alleged facts that underlie

**22.** 624 F.2d 412–13 (emphasis supplied) (citing *Mobil Oil Indonesia Inc. v. Asamera Oil (Indonesia) Ltd.*, 43 N.Y.2d 276, 281, 401 N.Y.S.2d 186, 372 N.E.2d 21 (1977); *Puerto Rico Maritime Shipping Auth. v. Star Lines, Ltd.*, 454 F.Supp. 368, 373–74 (S.D.N.Y.1978). *See also A/S Siljestad v. Hideca Trading Inc.*, 678 F.2d 391, 392 (2d Cir.1982) (per curiam).

Plaintiffs' reliance on a doctrine that would permit judicial review of "final awards on separate non-dependent claims," Plaintiffs' Memorandum in Opposition to Motion to Compel at

13 n. 11, is misplaced. Any such doctrine was expressly rejected in *Michaels*. *See* 624 F.2d at 415 n. 5.

**23.** *Cf. System Federation No. 152 v. Penn Central Co.*, 307 F.Supp. 1241, 1242 (S.D.N.Y. 1970).

**24.** Hirschkop Aff. ¶ 2 (Dec. 21, 1982).

**25.** Maurice N. Nessen, a founding partner of that firm, is also a former law clerk.

the controversy between the Hunts and Levitt. Whatever the reasons, whether the clients became disenchanted with the lawyer or vice versa, this is not an unusual occurrence in the course of professional legal relationships. The Hunts say that as a result they have an "antagonistic relationship" [26] with Levitt. But just what their break in their relationship with Levitt and this Court's close friendship with him has to do with the motion by the seven majors and Occidental to compel the Hunts to continue with the arbitration is far from clear, although to be sure the Hunts attempt an explanation.

The proffered explanation in the words of Hirschkop is that "[a] crucial aspect of [the Panel's dismissal of Hunts' claims] involves the conduct, authority and competence of Mr. Levitt and his law firm during the course of the arbitration on such matters as choosing the panel of arbitrators, seeking the production of documents from other parties, and approving the order of presentation of the various claims. In addition, because the proceedings in *Hunt v. Mobil* are relevant to the arbitration, Mr. Levitt's conduct in the antitrust case is also an integral component of plaintiffs' challenge." [27] Not a single evidentiary fact is set forth to clarify or to support this general and vague statement, although Hirschkop sat "cheek by jowl" alongside of Levitt throughout the eight-week trial before this Court and similarly in the arbitration litigation where he not only served in the same capacity but eventually took over as counsel in chief.

Upon the argument of this motion, this Court, in an effort to obtain some clarifica-tion of the Hunts' obscure charge so that appropriate analysis could be made, questioned Hirschkop as to the exact nature of the conduct relied upon to support the recusal claim which would have any relevancy on the defendants' application to compel the arbitration to proceed. Hirschkop responded that during the course of argument before the Magistrate who monitored the pretrial discovery process in advance of trial, Levitt "engaged in argument that was pure hyperbole at that time." [28] Since this explanation was not quite enlightening, in response to a further inquiry by the Court, Hirschkop defined the hyperbolic conduct as "Levitt would say a lot of things, some of which would bind the position [sic], some of which were humorous, some of which were . . . to hear himself talk." [29] The explanation proceeded that because of this "hyperbolic" argument, the arbitrators, some years later, excluded evidence offered by the Hunts and denied them documentary discovery and since this allegedly was due to Levitt's conduct, this Court would have to evaluate his actions in determining whether the arbitrators' rulings were correct. Accordingly, the Hunts argue that the Court should recuse itself, otherwise it "will be placed in the position of evaluating and judging the conduct of a close personal friend and protege." [30]

■ An application for the disqualification of a judge must rest on a factual basis and not on the whim of a litigant who asserts vague contentions. The test is not the subjective feelings of the plaintiffs. [31] There must be factual content to the allegations upon which recusal is sought before a judge's "impartiality might reasonably be

---

**26.** Memorandum in Support of Plaintiffs' Motion for Recusal at 9.

**27.** Hirschkop Aff. ¶ 10 (Dec. 21, 1982).

It should be noted that the defendants, in opposing this motion, dispute the Hunts' charges, and state that "Hirschkop actively participated in or solely directed for Hunt each of the particular matters which he now asserts put at issue 'the conduct, authority and competence of Mr. Levitt and his law firm . . . choosing the panel of arbitrators, seeking the production of documents from other parties, and ap-proving the order of presentation of the various claims.'" Broadwater Aff. ¶ 6 (Dec. 30, 1982).

**28.** Tr. Oral Arg. at 5.

**29.** Tr. Oral Arg. at 4.

**30.** Memorandum in Support of Plaintiffs' Motion for Recusal at 4.

**31.** *See Markus v. United States,* 545 F.Supp. 998, 1000 (S.D.N.Y.1982); *United States v. Corr,* 434 F.Supp. 408, 4121–13 (S.D.N.Y.1977).

questioned."[32] Here, the content of the "hyperbolic" statements or conduct which the arbitrators purportedly relied upon and based their rulings regarding the exclusion of evidence and the denial of documentary discovery has not been submitted. Indeed, no factual matter has been presented to convey the slightest idea of their nature or how they could have played any part in the Panel's ruling, particularly since arbitrators have great scope with respect to evidentiary matters.[33] Significantly, neither Hunts' papers in opposition to the defendants' motion to continue the arbitration, nor their papers in the state court action, contain a single reference to any alleged conduct of Levitt that might give the slightest support to their claims.

█ In sum, no facts have been presented that, even assuming their truth, would lead a reasonable person to infer that the Court's impartiality might reasonably be questioned.[34] This void is not filled by the fact that this Court has a continuing friendship with Levitt, who no longer represents the Hunts, and that the Hunts have a self-styled "antagonistic relationship" with him.

Accordingly, the Hunts' motion that the Court recuse itself is denied; the defendants' motion directing that the Hunts continue with the pending arbitration is granted; the defendants' further motion that the Hunts be enjoined from prosecuting their pending state action to vacate the judgment of the Panel and directing that the arbitration proceed de novo is also granted.

---

**32.** 28 U.S.C. § 455(a).

**33.** See Shearson Hayden Stone, Inc. v. Liang, 653 F.2d 310, 313 (7th Cir.1981); Bell Aerospace Co. v. Local 516, 500 F.2d 921, 923 (2d Cir.1974).

**34.** See United States v. Ferguson, 550 F.Supp. 1256, 1260 (S.D.N.Y.1982). See also Potashnick v. Port City Constr. Co., 609 F.2d 1101, 1111 (5th Cir.1980); Wolfson v. Palmieri, 396 F.2d 121, 125 (2d Cir.1968). Cf. United States v. Ferguson, 548 F.Supp. 1390, 1391 (S.D.N.Y. 1982).