**Nelson Bunker HUNT, W. Herbert Hunt and Lamar Hunt, Plaintiffs,**

**v.**

**MOBIL OIL CORPORATION, Texaco, Inc., Standard Oil Company of California, the British Petroleum Company Ltd., Shell Petroleum Company Ltd., Exxon Corporation, Gulf Oil Corporation, Occidental Petroleum Corporation, Grace Petroleum Corporation, and Gelsenberg AG, Defendants.**

**No. 75 Civil 1160.**

United States District Court, S. D. New York.

Dec. 5, 1977.

Nickerson, Kramer, Lowenstein, Nessen, Kamin & Soll, New York City, for plaintiffs; Daniel P. Levitt, Scarsdale, Ellen R. Nadler, Kenneth Berlin, Jeffrey T. Golenbock, New York City, of counsel.

Charles F. Kazlauskas, Jr., White Plains, N.Y., Lawrence R. Jerz, Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendant Texaco Inc.; Milton J. Schubin, Randolph S. Sherman, New York City, of counsel.

Howrey & Simon, Washington, D. C., Richard H. Zahm, Jr., Juliet Shepard, Mobil Oil Corp., New York City, for defendant Mobil Oil Corp.; Edward F. Howrey, A. Duncan Whitaker, Mark D. Wegener, Washington, D. C., of counsel.

Frank W. Morgan, Pittsburgh, Pa., for Gulf Oil Corp.; John E. Bailey, Charles O. Murray, III, A. Randall Friday, Houston, Tex., of counsel.

Cravath, Swaine & Moore, New York City, for defendant The Shell Petroleum Co. Ltd.

Shea, Gould, Climenko & Casey, New York City, for defendant The British Petroleum Co. Ltd.

OPINION

EDWARD WEINFELD, District Judge.

Defendants Texaco, Mobil, Gulf, Shell and British Petroleum move to vacate a stay of arbitration entered by this Court over two years ago and to stay trial of the antitrust claims pending arbitration of the contractual issues between the parties. They assert that the intervening pretrial discovery and case law now require that the plaintiffs' contract claims be submitted to arbitrators prior to the trial of the plaintiffs' antitrust claims.

As this Court stated in its earlier ruling: "It is now cardinal doctrine that the public interest in the enforcement of the antitrust laws makes antitrust claims inappropriate subjects for arbitration." [1] This Court then characterized the interrelationship of the breach of contract and the antitrust claims as follows:

The alleged breach of contract is an essential ingredient of plaintiff's second antitrust claim. The hard thrust of plaintiff's charge is that the withholding of ninety million barrels of oil due him under the supply provision was not only a breach of the Agreement, but also a concerted refusal to deal with him and a group boycott in furtherance of the conspiracy to eliminate him as a competitor. Thus what is at issue is not a mere breach of contract, which to be sure is within the competence of an arbitrator's determina-

1. *Hunt v. Mobil Oil Corp.*, 410 F.Supp. 10, 25 (S.D.N.Y.1975)

tion and by itself, if isolated, would not involve antitrust issues. However, the court will have to decide whether a breach of the oil supply provision occurred, and if so, whether it was committed by defendants individually or acting in concert and with the purpose and intent of eliminating him or injuring him as a competitor.

.  .  .

It is unrealistic to assert, as defendants do, that the breach of contract claim can be isolated so that the arbitrator can decide the issues thereunder without inquiry into matters that are material to the antitrust claims. The breach of contract and antitrust claims are so inextricably interrelated, one with the other, that it would not be easy, in the light of the parties' contentions, for the arbitrators to avoid wandering into the thicket of complex antitrust issues.[2]

Defendants contend that their extensive pretrial discovery demonstrates that all of plaintiffs' claims derive solely from the Libyan producers' Agreement ("LPA"); they also maintain that they have uncovered evidence that the Hunts sought a secret agreement with the Libyan government thereby waiving any entitlements they had under the LPA and providing defendants with a complete defense to this action. These issues, defendants assert, are purely contract claims and should be submitted to arbitration.

■ It is no doubt true that the plaintiffs' claims center about the LPA. Plaintiffs claim that they were forced to sign the agreement with an illegal resell restriction and that the defendants conspired to withhold oil under the LPA by concerted boycott aimed at eliminating or injuring them as competitors. These are clearly antitrust claims; and the fact that they directly concern the origin and performance of the

LPA demonstrates, contrary to defendants' position, the intertwined nature of the contract and antitrust claims and the inappropriateness of permitting the arbitration to proceed.

Nor does this Court find that *Sibley v. Tandy Corp.*[3] requires the granting of the instant application so that arbitration should precede the antitrust claims. In *Sibley* the Court characterized the antitrust claims of the plaintiff as a second "fallback" position. It described the case as "essentially a dispute over corporate valuations centered around complex issues of accounting and valuation. The securities law claim was the rather small tail to a much larger dog."[4] Only if the plaintiff's first two claims were decided *against* it could the court have reached the securities claim. Since a favorable arbitration decision for plaintiff would have eliminated the securities claim, the plaintiff's interest in vindicating federal claims was a subordinate matter and lacked substantial public interest aspects.[5]

In this case it is clear that the antitrust claims of the plaintiffs predominate. They are the very nerve center of the litigation. The antitrust claims are not "fall-back positions" that become relevant only after the contract claims are decided against the plaintiffs; a decision in favor of the plaintiffs by the arbitrators would not obviate the need for a trial of those claims before this Court. Thus, while the Court in *Sibley* could view the plaintiff itself as downplaying the significance of its federal claims, such is not the case here. Also it is to be noted that the *Sibley* court did not mention, much less overrule, *Cobb v. Lewis*,[6] which foreclosed arbitration as against trial of properly asserted antitrust claims.

Furthermore, the Second Circuit's decision in *Coenen v. R. W. Pressprich & Co.*,[7] holding that an agreement to arbitrate en-

2. *Id.* at 26.

3. 543 F.2d 540 (5th Cir. 1976), *petition for rehearing denied,* 547 F.2d 286 (5th Cir. 1977).

4. *Id.* at 543.

5. *See id.* at 544.

6. 488 F.2d 41 (5th Cir. 1974).

7. 453 F.2d 1209 (2d Cir. 1972).

tered into after the antitrust dispute arose is an exception to the rule of *American Safety Equipment Corp. v. J. P. Maguire & Co.*,[8] is clearly distinguishable. A fair reading of that case discloses the Court's basic concern with keeping disputes between members of the New York Stock Exchange out of court,[9] and not permitting plaintiffs to change a "common, garden variety" scheme to defraud—subject to the Exchange's comprehensive and salutary arbitration system—into a federal court case merely by adding to the complaint "a few conclusory phrases to give the illusion of a triple-damage antitrust claim." It was the congressional intent of self-regulation by the stock exchanges that was the key to the exception. Moreover, the reasoning of the exception to the general rule is explained by the Court as follows:

> [T]he parties already know just what they are agreeing to arbitrate, and also that, as a claimant is not required to sue and is always free to settle a private triple-damage antitrust case, his agreement to arbitrate is in effect an agreement to settle the dispute.[10]

Obviously, this case presents an entirely different situation where plaintiffs claim that they were coerced into signing the agreement with the arbitration clause; that is, where the agreement itself is part and parcel of the alleged antitrust violation.[11]

Finally, and of significance, is the recently decided case of *Allegaert v. Perot*.[12] Although the fact pattern centered about a bankruptcy trustee's claims under the bankruptcy and securities acts, our Court of Appeals made it unmistakably clear that it continued to apply the underlying rationale of its earlier cases that arbitration agreements must be subordinated to adjudication by the courts of actions which seek to uphold the public interest although advanced in private litigation. Thus, in referring to its lead case on this subject, *American Safety Equipment Corp. v. J. P. Maguire & Co.*,[13] the Court observed that "there . . . we examined, among other things, the public interest in the dispute, the degree to which the nature of the evidence made the judicial forum preferable to arbitration and the extent to which the agreement to arbitrate was a product of free choice." [14]

The Court finds that defendants have presented no material factual or legal considerations that warrant staying the trial of the antitrust claims asserted by the plaintiffs. It is not only the interests of the parties that are at stake in the trial of these issues, but also the interest of the American public in the enforcement of its antitrust laws.[15]

The motion is denied.

---

**8.** 391 F.2d 821 (2d Cir. 1968).

**9.** *See* 453 F.2d at 1212, 1214–15.

**10.** *Id.* at 1215.

**11.** *Cf. Cobb v. Lewis,* 448 F.2d 41, 49 (5th Cir. 1974) (requiring party to make "an informed, deliberate and explicit decision to have his antitrust claims arbitrated" before applying the *Coenen* exception).

**12.** 548 F.2d 432 (2d Cir.), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977).

**13.** 391 F.2d 821 (2d Cir. 1968).

**14.** 548 F.2d at 436.

**15.** *Cf. United States v. Standard Ultramarine & Color Co.,* 137 F.Supp. 167, 170–71 (S.D.N.Y. 1955).