**BELL CANADA, Plaintiff,**

v.

**ITT TELECOMMUNICATIONS CORPORATION, International Telephone and Telegraph Corporation and Insurance Company of North America, Defendants.**

No. 82 Civ. 6544.

United States District Court,
S.D. New York.

May 9, 1983.

---

Winthrop, Stimson, Putnam & Roberts, New York City, for plaintiff; Stephen A. Weiner, New York City, of counsel.

Rogers & Wells, New York City, for defendants; William J. O'Brien, II, Joan N. Simon, William R. Glendon, Stephen Froling, John M. Quitmeyer, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This diversity action for breach of contract was commenced by Bell Canada ("Bell"), a Canadian corporation, against ITT Telecommunications Corporation ("ITT"); a related company, International Telephone and Telegraph Corporation; and Insurance Company of North America, domestic corporations, each licensed to do, and doing, business in New York State. Nine days prior to the commencement of this action, ITT served upon Bell a demand for arbitration purportedly authorized by a pro-

vision of the agreement upon which Bell's instant action for breach of contract is based.

Bell now moves pursuant to Fed.R.Civ.P. 65 for an order (1) enjoining ITT from proceeding with the arbitration, and (2) staying the arbitration pending the determination of this action. ITT cross-moves pursuant to the Federal Arbitration Act[1] ("the Act") and the inherent power of this Court to (1) stay this action as against all defendants, and (2) for an order pursuant to the Act[2] to compel arbitration of the dispute between it and Bell.

Bell and ITT entered into the contract at issue on June 1, 1980 under which ITT agreed to design, manufacture and install communications equipment intended for use with an integrated system known as the Joint Surveillance System to be used by military and civil agencies of the United States and Canada for aircraft detection and control and related purposes. ITT was to furnish Bell two Regional Operations Control Center switches to be located in North Bay, Ontario, at sites known as Canada East and Canada West, along with certain specified site equipment. Time was to be of the essence with ITT obligated to deliver and install equipment as per a specified schedule. ITT had previously entered into similar contracts with five American telephone companies ("Telcos") and its demand for arbitration also extended to this group.

During the progress of the work substantial differences arose among the various parties as to requirements and performance under the agreements, but attempts to reconcile their differences failed. On April 21, 1982, Bell served upon ITT notice of cancellation of the contract upon the ground that ITT had failed to meet scheduled dates of performance for the Canada East and Canada West locations and for other alleged defaults.

Bell's complaint in this action alleges that ITT had breached the agreement as already

---

**1.** 9 U.S.C. § 3.

**2.** 9 U.S.C. § 4.

referred to; also by failing to deliver payment and performance bonds required under the contract and seeks recovery of $1,268,109.20 previously paid to ITT, as well as other damages flowing from the alleged breaches. What is at issue on these respective motions is the scope of Article 4 of the contract which ITT invoked in serving its demand for arbitration. Before discussing the parties' differing contentions, it is desirable to note certain basic principles applicable to interpretation of arbitration clauses that have recently been reiterated by our Court of Appeals:

> [A]rbitration agreements are favored in the law and are to be broadly construed. An order to arbitrate should not be denied unless it can be said that the arbitration clause is not susceptible of a reasonable interpretation covering the asserted dispute. In short, doubts should be resolved in favor of coverage. *United Steelworkers of America v. Warrior & Gulf Navigation,* 363 U.S. 574, 582–83 [80 S.Ct. 1347; 1352–1353, 4 L.Ed.2d 1409] (1960)....
>
> On the other hand, a party cannot be required to submit to arbitration any disputes which he has not agreed to submit.[3]

Also, while the parties in their extensive briefs and affidavits refer to the relative merits of their respective claims, the Court's role here is limited. It has no concern with the merits of their controversy. Its sole inquiry is directed to whether the parties agreed to arbitrate the particular matters at issue—one to be decided within the framework of their agreement.[4]

■ The parties are in accord that since their contract evidences a transaction in foreign commerce within the meaning of the Federal Arbitration Act,[5] the interpretation, validity and enforcement of the arbitration clause is governed by federal rather than state law, although the contract itself provides that its interpretation shall be governed by the laws of the State of New York.[6]

Against that background of the law, we turn to the arbitration clause contained in Article 4 of the parties' agreement:

### COMPANY'S DECISION

Company [Bell] shall be the interpreter of the contract but should Contractor [ITT] consider such interpretation to be at variance with the contract documents, he [sic] shall notify Company in writing before proceeding to carry out the work. Should Contractor disagree with Company's interpretation, Contractor shall perform such work according to the interpretation of Company. Any question of additional cost due to this article shall be decided by arbitration as provided in this contract.

Procedures for arbitration in respect of additional costs shall conform to the Commercial Arbitration Rules of the American Arbitration Association. Arbitration proceedings need not take place until after the completion of the work to be performed hereunder. No such arbitration shall in any way delay performance of the work.

. . . .

Thus the parties agreed that Bell is the interpreter of the contract. Upon analysis, arbitration is provided for in those instances where (1) Bell makes an interpretation; (2) ITT disagrees with such interpretation and

---

**3.** *Coudert v. Paine Webber Jackson & Curtis,* 705 F.2d 78 (2d Cir.1983).

**4.** *See United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960); *International Union v. Westinghouse,* 218 F.Supp. 82 (S.D.N.Y. 1963), *aff'd,* 326 F.2d 758 (2d Cir.1964).

**5.** 9 U.S.C. §§ 1 and 2.

**6.** *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18

L.Ed.2d 1270 (1967). *See also A/S J. Ludwig Mowinckels Rederi v. Dow Chemical Co.,* 25 N.Y.2d 576, 307 N.Y.S.2d 660, 255 N.E.2d 774, *cert. denied,* 398 U.S. 939, 90 S.Ct. 1844, 26 L.Ed.2d 272 (1970); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 406–09 (2d Cir.1959), *cert. denied,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); *Michele Amoruso E. Figli v. Fisheries Development Corp.,* 499 F.Supp. 1074, 1080 (S.D.N.Y.1980).

so notifies Bell in writing before proceeding to carry out the work; (3) ITT performs the work according to Bell's interpretation; and (4) a question of additional costs due to the interpretation arises under Article 4, which is to be decided by arbitration.

It is at once evident that the clause is not the so-called general or standard one which provides that any controversy or claim arising out of or relating to the contract or the terms thereof shall be determined by arbitration.[7] That the parties did not use the standard or a similar broad clause but tailored a provision applicable only in a clearly defined situation is forceful evidence of their purpose to limit the arbitrable issues.[8] Significantly, there is no other arbitration clause in the contract. And it is also not without significance that the contract was entered into only after extensive negotiations by representatives of each, as well as other interested parties, who were of considerable experience in the drafting of contracts in the highly specialized satellite telecommunications equipment and manufacturing industry. The Court is persuaded that of all ITT's arbitration claims, only items (i) and (ii) of the "Fourth Claim" come within the arbitration provision. As stated in the arbitration demand, the Fourth Claim reads in part:

> Following execution of the Contracts, U.S. Telcos and Bell Canada (by themselves and through their agents):
> (i) ordered substantial additions to and modifications of the work to be performed by [ITT] . . . under the Contracts;
> (ii) took actions which have required [ITT] . . . to do additional work not initially required under the Contracts.

These can be construed as claims for "Additional Cost Items" arising by reason of an interpretation under Article 4.

But no matter how liberally the arbitration clause may be read, the remaining claims asserted against Bell in the arbitration demand are not encompassed by it. These claims[9] are as follows:

*Third Claim:* For $5,340,830.80 representing unpaid costs incurred in performing completed and uncompleted work plus a reasonable profit thereon on the ground that ITT's delays in performance are excusable under the *force majeure* provision of the contract.

*Item (iii) of Fourth Claim:* Unspecified damages because Bell failed to perform and delayed performance of certain of its obligations under the contract which were required to be performed to permit timely and efficient performance by ITT of its obligations under the contract.

*Fifth Claim:* For $4,524,890.80 representing the unpaid balance of the price of goods identified to the contract, on the ground that Bell wrongfully repudiated the contract and ITT is entitled to the recovery it seeks pursuant to U.C.C. § 2–709.

*Sixth Claim:* Bell's proportionate share of $5,946,000.00 representing profits allegedly lost because of failure to take delivery of goods under the contract, on the ground that Bell wrongfully repudiated the contract and ITT is entitled to the recovery it seeks pursuant to U.C.C. § 2–708.

*Seventh Claim:* $3,366,290.80 representing the balance owed on equipment sold and delivered to Bell.

*Ninth Claim:* Unspecified damages for Bell's alleged tortious interference with ITT's contract rights by failing to give full and accurate advice to others as to

Plaintiff's Reply Memorandum at 10.

7. The so-called standard clause suggested by the American Arbitration Association provides:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof.

8. *See Cook v. Gristede Bros.,* 359 F.Supp. 906, 908 (S.D.N.Y.1973). *See also Butler Products Co. v. Unistrut Corp.,* 367 F.2d 733, 735 (7th Cir.1966).

9. Other claims are advanced against other parties (telcos) and are not at issue on these motions.

the status of ITT's performance and its ability to perform and by inaccurately attributing delays in performance to ITT.

The Court can say with "positive assurance"[10] that the above listed claims for: (1) a balance due for completed and uncompleted work and lost profits under the *force majeure* provision of the contract; (2) damages claimed because of Bell's failure to perform and delayed performance on its part; (3) balances due for goods identified to the contract and profits lost based on Bell's wrongful repudiation of the contract under provisions of the Uniform Commercial Code; (4) a balance due on equipment sold and delivered to Bell; and (5) tortious interference with ITT's contract rights by failing to furnish accurate information to Telcos about ITT's performance, do not come within the parties' agreement to arbitrate. They do not involve additional costs due to Bell's interpretation of the contract under Article 4.

Thus we turn to items (i) and (ii) of the Fourth Claim, those for "Additional Cost Items." Bell acknowledges, but does not concede, that the subject matter of these items arising out of an interpretation of contract provisions under Article 4 may come within the arbitration provision. But it contends that even so, arbitration may not be enforced because ITT was required but failed to notify Bell "in writing" of its disagreement with Bell's interpretation before proceeding with the work. It urges that this notice requirement was a condition precedent and since ITT failed to give such notice its demand for arbitration as to this claim is void, and that the determination of this issue is for the Court. ITT, contrariwise, contends that Bell had been "apprised" that its acts had imposed additional costs; that in any event whether the written notice provision had been complied with

is not a substantive but a procedural issue to be determined by the arbitrators.[11] Bell relies principally upon a Third Circuit case, *Philadelphia Printing Pressmen's Union No. 16 v. International Paper Company.*[12] There a union had failed to reduce an arbitral grievance on behalf of a terminated employee to writing as required by a provision of the collective bargaining agreement and the Court held that the failure to give such written notice was not a "mere procedural formality," but a requirement absent which the arbitration machinery could not be invoked. This holding appears to be at variance with a holding by our Court of Appeals in *Rochester Telephone Corporation v. Communication Workers of America.*[13] The Court held that whether there had been compliance with the following provision was a question for the arbitrators.

> Notice of intention to arbitrate any grievance shall be given by either party to the other within sixty (60) calendar days of the date of the other party's answer at Step 3 of the grievance procedure or the grievance will be considered closed and the grieving party foreclosed from taking the grievance to arbitration.[14]

The foregoing clause, even more clearly than that at issue here, specifically provides that absent timely notice arbitration of the grievance is foreclosed. In the instant case the provision merely states that ITT shall notify Bell in writing that ITT disagrees with Bell's interpretation of the contract before proceeding with the work; it does not specify, as did the clause in *Rochester Telephone,* that absent such notice arbitration is foreclosed. Therefore, *a fortiori, Rochester* compels a holding that the question of compliance with the notice provision and its effect is for the arbitrator and not for the Court to decide.[15] Moreover, since

**10.** *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–1353, 4 L.Ed.2d 1409 (1960).

**11.** Citing *Carey v. General Elec. Co.,* 315 F.2d 499, 503 (2d Cir.1963), *cert. denied,* 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964).

**12.** 648 F.2d 900 (3d Cir.1981).

**13.** 340 F.2d 237 (2d Cir.1965).

**14.** *Id.* at 238.

**15.** *See also John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964) ("Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'pro-

the provision does not expressly foreclose arbitration upon the failure to give written notice, the general policy favoring a construction in favor of arbitration should control.

With all of ITT's claims for arbitration, except the two items referred to under its Fourth Claim, beyond the arbitral process, we consider Bell's motion to stay the arbitration and ITT's cross-motion to stay this action pending arbitration. The parties agree that for the lawsuit and the arbitration to proceed apace would be duplicative, wasteful, expensive and time consuming. Also, they recognize that their respective claims are interrelated;[16] and that there is the prospect a fact determination by the Court or the arbitrators would have preclusive consequences.[17]

Each side presses that it is entitled to proceed ahead of the other and urges that the Court exercise its discretion in its favor.[18] Stripped down to essentials the parties' respective claims center about the contract and for claimed breaches. The ITT arbitrable claims are but one aspect of an all encompassing controversy as to which party breached which provision and whether by acts or conduct alleged, breaches were waived. The nonarbitrable claims, Bell's and those of ITT referred to above, far outnumber the arbitrable claims. To allow the two items for "Additional Costs" to proceed to arbitration ahead of the issues encompassed in this action would still leave many other issues for judicial determination. The "Additional Cost" claims may be described, to borrow an expression used in a somewhat related situation, as "the rather small tail to a much larger dog."[19] Under all the circumstances, the interests of the parties would best be served by staying the arbitration as to the two items which are arbitrable.

ITT's argument that arbitration can provide a speedy and inexpensive disposition of its claim is unavailing.[20] Once hailed as a boon to the commercial world, the experience of this Court in recent years raises serious questions whether the high hopes of prompt disposition by the arbitral process have been realized. Arbitration is not a one-way street. It has its drawbacks as

cedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Conticommodity Services, Inc. v. Phillip & Lion*, 613 F.2d 1222 (2d Cir.1980) (compliance with limitations period in arbitration agreement or commodity exchange rules is for arbitrator rather than Court to decide); *Carey v. General Electric Co.*, 315 F.2d 499, 503 (2d Cir.1963), *cert. denied*, 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964) ("The question of compliance with conditions precedent [in that case, the timeliness of notice of the grievance and demand for arbitration] [is] a matter solely for the arbitrator to decide."); *Davis v. Pro Basketball*, 381 F.Supp. 1, 5 (S.D.N.Y.1974) ("In this circuit, *Wiley* has been read to apply even to issues which might bar arbitration altogether."); *International Union v. General Elec. Co.*, 278 F.Supp. 991, 996 & n. 8 (S.D.N.Y.), *aff'd in part, rev'd in part on other grounds*, 407 F.2d 253 (2d Cir.1968), *cert. denied*, 395 U.S. 904, 89 S.Ct. 1742, 23 L.Ed.2d 217 (1969) (If the grievance is subject to arbitration, the issue of untimeliness is procedural and is for determination by the arbitrator.)

**16.** Indeed, ITT acknowledges that "the Complaint demonstrates that the same issues not only predominate, but are fully intertwined with the claims raised in the Demand for Arbitration."

**17.** Cf. *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 644 (7th Cir.1981).

**18.** See *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165–166, 81 L.Ed. 153 (1936) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket with economy of time and effort for itself, for counsel and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.")

**19.** *Sibley v. Tandy Corp.*, 543 F.2d 540, 543 (5th Cir.1976). See also *Allegaert v. Perot*, 548 F.2d 432, 437 (2d Cir.), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1084 (1977); *Sills v. Phillips, Appel & Walden, Inc.*, 79 Civ. 1712 (S.D.N.Y. July 30, 1979); *Hunt v. Mobil Oil Corp.*, 444 F.Supp. 68 (S.D.N.Y.1977) and 410 F.Supp. 10 (S.D.N.Y.1975), *aff'd*, 550 F.2d 68 (2d Cir.), *cert. denied*, 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977).

**20.** Cf. *Conticommodity Services, Inc. v. Phillip & Lion*, 613 F.2d 1222, 1224 (2d Cir.1980).

well as advantages.[21] In instance after instance upon this Court's calendar calls in recent years, attorneys seek extensive adjournments of pending cases solely based upon unexplained delays before arbitrators or failure to appoint arbitrators. Indeed in a matter where arbitration was stayed pending a trial of nonarbitrable issues in the lawsuit and after the trial the stay was lifted so that arbitration could proceed, this Court observed: "[s]ince the entry of judgment the parties have been engaged over a four year period in one aspect or another of the arbitration" and "the end of the controversy is nowhere in sight," [22] with the prospect that it "is well on its way to outdistance *Jarndyce v. Jarndyce.*" [23]

In sum, the Court holds that only items (i) and (ii) of the Fourth Claim are arbitrable under the parties' agreement and stays arbitration of those claims pending litigation of the nonarbitrable claims asserted by Bell Canada in its complaint as well as any counterclaims ITT may assert in this forum.

---

**21.** *See Washington-Baltimore Newspaper Guild v. The Washington Post,* 442 F.2d 1234, 1238 (D.C.Cir.1974); *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (Rakta),* 508 F.2d 969, 975 (2d Cir.1974) ("By agreeing to submit grievances to arbitration a party relinquishes his courtroom rights—including that to subpoena witnesses—in favor of arbitration with all its well known advantages and drawbacks.")

**22.** *Hunt v. Mobil Oil Corp.,* 557 F.Supp. 368, 373 (S.D.N.Y.1983).

