UNIVERSAL MARINE INSURANCE COMPANY, LTD.

v.

BEACON INSURANCE COMPANY, Neil Portermain, New Orleans Reinsurers, Inc., Robert D. Schirmer, B.F.G. Toomey & Associates, Inc., B.F.G. Toomey Associates, Ltd., Barry Toomey, Cherokee Insurance Company, Ltd., Frederick B. Ingram, and Ingram Corporation.

No. ST-C-83-328-P.

United States District Court, W.D. North Carolina, Statesville Division.

May 4, 1984.

E. Fitzgerald Parnell, III, Charlotte, N.C., Bruce M. Friedman, New York City, for plaintiff.

Ronald A. Jacks, Isham, Lincoln & Beale, Chicago, Ill., James E. Walker, Walker, Palmer & Miller, Douglas M. Martin, Charlotte, N.C., for defendants, Beacon and Portermain.

John DeQ. Briggs, III, Howrey & Simon, Washington, D.C., Thomas P. Kanaday, Jr., Farris, Warfield & Kanaday, Nashville, Tenn., Harold M. Tract, Rein, Mound & Cotton, New York City, Robert B. Cordle, Helms, Mulliss & Johnston, Charlotte, N.C., for defendants Cherokee and Dana.

Raymond E. Owens, Jr., Charlotte, N.C., for defendants Robert Schirmer and New Orleans Reinsurers.

Gaston H. Gage, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., for defendants Frederick B. Ingram and Ingram Corp.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER was heard before the undersigned on May 2, 1984 in Charlotte, North Carolina. The Plaintiff was represented by Bruce Freeman, E. Fitzgerald Parnell, III, and Hugh Campbell. Beacon Insurance Company and Neil Portermain were represented by Ronald A. Jacks, Richard L. Griffin, James E. Walker, and Douglas M. Martin. Cherokee Insurance Company was represented by John DeQ. Briggs, III, Thomas P. Kanaday, Jr., Harold M. Tract, and Robert B. Cordle. Nola Re and Robert Shirmer were represented by Raymond E. Owens. Frederick B. Ingram and Ingram Corporation were represented by Gaston H. Gage. First American National Bank was represented by Julia Jones.

Beacon moves the Court to compel Cherokee to submit to arbitration and to stay all litigation pending arbitration. Nola Re similarly moves the Court to compel Cherokee to submit to arbitration and stay the litigation pending arbitration. Cherokee opposes both motions and, in addition, moves the Court to stay the requested arbitration until after the Court determines Cherokee's claim for rescission of the respective reinsurance agreements out of which this litigation developed.

■ Cherokee initially asserts that Beacon has waived its right to demand arbitration by filing cross-claims against Cherokee and "compelling" Cherokee to bring cross-claims against Beacon. Although a delay in making an arbitration demand may constitute waiver of a party's right to compel arbitration, a waiver is not readily inferred under the United States Arbitration Act, 9 U.S.C. § 1 *et seq.* (1982) ("Arbitration Act"), because of the strong federal policy favoring arbitration. *In Re Mercury Construction Corp. v. Moses H. Cone Memorial Hospital,* 656 F.2d 933, 939 (4th Cir.

1981), *aff'd, Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Only if a delay in demanding arbitration has resulted in actual prejudice to the objecting party or if there has been substantial invocation of litigation inconsistent with the right to arbitrate will the delay constitute a waiver of the right to arbitrate. *Id.* at 939–40.

From the commencement of this litigation Beacon has consistently taken the position that the parties would ultimately have to resort to arbitration. During the first hearing in this litigation, arising out of UMIC's motion for a preliminary injunction, Beacon joined Cherokee's motion to stay all proceedings pending arbitration.[1] Beacon further informed the parties present during the hearing that if a dispute arose between Beacon and Cherokee, the dispute would be submitted to arbitration. Similarly, at the hearing arising out of the Beacon/Cherokee dispute over payment of letters of credit, Beacon maintained its position that the fundamental dispute must be submitted to arbitration. Beacon's filing of its responsive pleadings, naturally containing asserted cross-claims, and its attempt to obtain immediate payment of the letters of credit simply does not qualify as the kind of prejudice which is the essence of default under 9 U.S.C. § 3 (1982).

Cherokee next argues that the Court should not compel arbitration and stay the litigation because the arbitrators do not possess the authority to award all of the relief sought by Cherokee. As arbitration is a matter of contract a party cannot be ordered to submit to arbitration an issue which it has not so contracted to submit. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Accordingly, the authority of the arbitrator necessarily depends on the scope of the arbitration clause.

The interpretation of the scope of an arbitration clause is governed by two

guiding legal principles. One, as there is a strong federal policy favoring arbitration as evidenced by the Arbitration Act, "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Two, an order to arbitrate a particular grievance should not be denied unless it may be said with "positive assurance" that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Bell Canada v. ITT*, 563 F.Supp. 636, 640 (S.D.N.Y.1983); *Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 45 (3d Cir. 1978); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960) (dealing with Labor Management Relations Act, 29 U.S.C. § 301).

As between Beacon and Cherokee there are four separate contracts on which the litigation is based—the quota share treaty, the first excess of loss treaty, the second excess of loss treaty, and the retrocession agreement. The only disputed contract between Nola Re and Cherokee is the multiple line reinsurance agreement. As the pertinent arbitration language in the Nola Re/Cherokee treaty is virtually identical to the arbitration language in the Cherokee/Beacon retrocession agreement, the Court need not discuss each contract separately.

Of the four contracts between Cherokee and Beacon, the pertinent arbitration language is different in only one contract, the retrocession agreement. The retrocession agreement provides for arbitration "[i]n the event of any irreconcilable dispute between the Company and the Reinsurer in connection with the Agreement." The quota share treaty, the first excess of loss treaty, and the second excess of loss treaty provide that:

> [s]hould an irreconcilable difference of opinion or dispute arise between the par-

---

1. Cherokee withdrew its motion to stay on April 25, 1984.

ties to this Agreement as to the interpretation of this Agreement, or transactions with respect to this Agreement, such difference, or dispute shall (be submitted to arbitration).

\* \* \* \* \* \*

It is expressly agreed that the jurisdiction of the arbitrators to make or render any decision or award shall be limited by the limits of liability expressly set forth herein, and that the arbitrators shall not have jurisdiction to make any decision or render any award exceeding such expressly stated liability limit. . . .

Although the language employed in the quota share treaty and the excess of loss treaties is somewhat more limiting than the language utilized in the retrocession agreement, the Court does not find that the language is as limiting as Cherokee would contend.

Cherokee argues that the arbitration language precludes the arbitrator from resolving Cherokee's claim of rescission premised on fraud in the inducement of the contract and its claim against Beacon under the Racketeer Influenced and Corruption Organization Act, 18 U.S.C. §§ 1961–1968 (1982) ("RICO"). Thus, arbitration would be of nominal assistance in providing an expeditious resolution to the underlying dispute.

■ Although it is questionable whether an arbitrator could grant "rescission", it cannot be said with "positive assurance" that the arbitrator could not determine the issue of fraud in the inducement of the contract. In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Supreme Court rejected the argument that the issue of fraud in the inducement of the contract was outside the scope of the arbitration clause. The arbitration clause in *Prima Paint* provided for arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or breach thereof." *Id.* at 398, 87 S.Ct. at 1803. Comparing the clause in *Prima Paint* with the retrocession agreement's utilization of "any irreconcilable dispute" and the quota

share treaty's reference to "any irreconcilable difference of opinion or dispute . . . or transactions with respect to this Agreement" the difference, if any, is one of form and not substance. Accordingly, the Court is of the opinion that the arbitration clause does not limit the authority of the arbitrators to determine the underlying facts upon which Cherokee's claim for recission is premised and to fashion appropriate relief within the confines of its jurisdiction.

■ As to the alleged RICO violations, Cherokee is correct in arguing that RICO claims are nonarbitrable. *S.A. Mineracao da Trindade-Samitri v. Utah International, Inc.*, 576 F.Supp. 566, 576 (S.D.N.Y. 1983). The nonarbitrability of the RICO claim, however, does not justify staying the arbitration pending a determination of the RICO claim. The converse is actually mandated, as "a stay of nonarbitrable claims is normally granted 'as a matter of course,' especially where the arbitrable claims 'permeate' the case and the nonarbitrable claims are weak or peripheral." *Id.* at 576. This litigation is basically a reinsurance commercial dispute concerning the validity, the terms and the administration of the various reinsurance treaties. The RICO count, obviously peripheral to the major disputes, should not operate to sever the parties of their rights to proceed fully with the arbitration originally contemplated in the reinsurance agreements.

■ Cherokee's final argument against proceeding apace with arbitration is that it is impractical and would be time consuming, wasteful, and difficult to achieve. Aside from the speculative assertions of the delays allegedly inherent in the arbitration procedure, Cherokee's primary contention is that arbitration will result in piecemeal resolution of the claims. It is correct that arbitration will result in piecemeal adjudication of the litigation, as all of the claims are not arbitrable. That untoward result, however, is the result of the parties' agreement to arbitrate.

The Arbitration Act is unequivocal in directing parties to proceed with arbitration

when it is so contracted for. 9 U.S.C. § 4 (1982). Accordingly, the Supreme Court in recognition of the provisions of Section 4 of the Arbitration Act noted that the resulting potential for piecemeal resolution does not justify disregard of the Arbitration Act:

> It is true, therefore, that if Mercury obtains an arbitration order for its dispute, the Hospital will be forced to resolve these related disputes in different forums. That misfortune, however, is not the result of any choice between the federal and state courts; it occurs because the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement. (Emphasis in original). 103 S.Ct. at 939 (1983).

In the instant case, the mere existence of piecemeal litigation, does not outweigh the factors weighing in favor of proceeding with arbitration. Resolution of the arbitrable issues, including the allegations of fraud, may significantly clarify or speed the resolution of all issues in these claims. Many of the claims among the parties spring from the same set of operative facts and assumptions. As such, a determination of the validity of the contentions as to some of the parties will make trial of the nonarbitrable issues less complex and simplify trial preparation and proof. In addition, the multiple issues raised are extremely complex and interdependent because of the peculiar nature of the reinsurance industry. Several of the treaties involved in this litigation were executed in contemplation of each other. The interpretation of certain contracts necessarily depends upon an interpretation of the contracts subject to arbitration. The difficulty in construing the interrelationship among the contracts is coupled with the unique practices, policies, customs, and standards in the reinsurance industry. Resolution of the contractual issues by experienced reinsurance experts, who quickly comprehend the true nature of the disputed transactions, will clarify, simplify, and streamline the ultimate resolution of the litigation. The Court is, therefore, of the opinion that Cherokee should be ordered to proceed with arbitration with Nola Re and Beacon and the litigation should be stayed pending arbitration.

Having decided Cherokee should proceed with arbitration and the litigation should be stayed, several peripheral matters need to be resolved with respect to unification of the arbitration process and with respect to matters pending prior to the arbitration hearing. The Court after carefully considering the matter is, therefore, of the opinion that it should temporarily stay this Order to arbitrate until May 18, 1984 to allow Beacon, Nola Re and Cherokee to reform the five separate arbitration clauses in order to develop a unified arbitrable process. As to matters outstanding prior to the determination of the instant motions, the Court is of the opinion that the stay of proceedings should not operate to stay a determination of the outstanding motions to dismiss of Dana Corporation, Frederick Ingram, and First American National Bank. In addition, the Court should not stay its determination of UMIC's motion for reconsideration and its oral motion to amend its Complaint. Finally, as to the two depositions of employees of Reinsurance Intermediaries, Inc., commenced prior to the arbitration hearing, the Court should permit the completion of these two depositions. All other discovery, however, is stayed pending arbitration.

IT IS, THEREFORE, ORDERED that:

(1) The motions of Beacon and Nola Re to compel arbitration are GRANTED;

(2) The Order compelling arbitration is stayed temporarily until May 18, 1984;

(3) The motions of Beacon and Nola Re to stay all litigation pending arbitration are GRANTED, except as to the following matters:

(a) The two previously commenced depositions of employees of Reinsurance Intermediaries, Inc.;

**740**

(b) The motions of UMIC for reconsideration and to amend its Complaint;

(c) The motions to dismiss of Dana Corporation, Frederick Ingram, and First American National Bank.

(4) The motion of Cherokee to stay arbitration is DENIED.