GAF Corporation, Appellant, v Jesse Werner, Respondent, et al., Defendants. (Action No. 1.)

In the Matter of the Arbitration between GAF Corporation, Appellant, and Jesse Werner, Respondent. (Proceeding No. 2.)

Jesse Werner, Respondent, v GAF Corporation, Appellant, et al., Defendants. (Action No. 3.)

First Department, January 22, 1985

### APPEARANCES OF COUNSEL

*Norman Solovay* of counsel (*Harvey J. Goldschmid, David R. Foley* and *Mark H. Moore* with him on the brief; *Holtzmann, Wise & Shepard,* attorneys), for appellant.

*Arthur Richenthal* of counsel (*Richenthal, Abrams & Moss,* attorneys), for respondent.

### OPINION OF THE COURT

Ross, J.

GAF Corporation (GAF) manufactures and sells chemicals, photographic products, and building materials. It is a Delaware

corporation and its principal place of business is located in New York County. In 1965, GAF became a publicly held company and its common and preferred stock are listed and traded on the New York Stock Exchange. This corporation had approximately 45,000 shareholders in 1983.[1]

Jesse Werner (Werner) has spent his entire career with GAF, commencing in 1938 as a research chemist. Over the next 26 years Werner rose through the corporate ranks, and in 1964 he was elected chairman of the board of directors. Thereafter, he held that post until December, 1983, when he was terminated by new management, which had won a proxy fight.

In the two years preceding the firing of Werner, five separate shareholder derivative actions had been filed against Werner and the members of the board of directors (the old Board) that were serving with him. The common thread that ran through these derivative actions was that Werner and the old Board were allegedly guilty of acts of financial mismanagement, corporate unfairness, waste and self-dealing. In particular, those actions charged: (1) that Werner, while chairman, improperly controlled the old Board by his influence over the salaries, emoluments and other benefits that these persons received from GAF; (2) that allegedly this improper control led the old Board to approve, in 1981, a compensation package for Werner, which has an alleged value of about $5,000,000; (3) that allegedly this old Board improperly approved the excessive expenditure of GAF funds in waging a proxy battle, solely to protect Werner's and their position at GAF, and Werner's compensation package; and (4) that allegedly both the approval of the Werner compensation package and the funds to finance this proxy fight constituted breaches of fiduciary duty to the shareholders by Werner and the old Board members.

The subject compensation package consists of two parts. First, there is a written employment agreement between GAF and Werner, dated September 17, 1981, and it provides, in pertinent part: (a) that its term is five years; (b) that his base salary is fixed at $425,000 for the first year and each year thereafter it increases by $25,000; (c) that lifetime dental, medical and hospital benefits are provided to Werner and his wife; and, (d) that he is provided supplemental retirement benefits. Second, during the period 1977 through 1981, Werner was granted stock options, to purchase 120,000 shares of GAF common stock, pursuant to GAF's 1975 stock option plan.

---

1. *GAF Corp. v Heyman,* 724 F2d 727, 728 (CA2d).

Following the ouster of Werner and the old Board, the successor board of directors (the new Board) appointed a special committee, chaired by former United States Senator Joseph Tydings (Tydings), to examine into, *inter alia,* the merits of the charges set forth in the five derivative suits,[2] mentioned *supra,* and make recommendations. Upon the basis of its investigation, this committee reported to the new Board that these suits contained merit, and recommended that it would be in the best interest of GAF to cause these individual actions to be discontinued, and to prosecute in the corporate name, allegations of financial mismanagement, corporate waste, self-dealing and breach of fiduciary duty against Werner and the old Board, which allegations related to the old Board's approval of Werner's compensation package and the financing of the proxy struggle. The new Board adopted this recommendation and commenced action.

The instant complaint in this GAF action (hereinafter referred to as the consolidated action) deals in the first cause of action with the alleged improprieties of Werner's compensation package, including that portion of the package that relates to the employment agreement, and deals in the second cause of action with the alleged improprieties in making available excessive funds to fight the proxy battle. GAF seeks to recover in this action compensatory and punitive damages from Werner and the old Board for their misconduct.

On or about December 13, 1983, before the new Board instituted GAF's instant action, they stopped paying Werner his salary and benefits under the 1981 employment agreement, mentioned *supra.* In response to the new Board ceasing to pay him a salary and benefits, Werner, by registered letter, dated January 18, 1984, notified the new Board of GAF that they were allegedly in breach of the employment agreement, and that he demanded arbitration of this dispute, pursuant to paragraph 12 of that agreement. Paragraph 12 reads, in pertinent part: "In the event that *any* disagreement of *any* kind shall arise between the parties hereto as to any matter or thing whatsoever hereunder, such disagreement shall be arbitrated in the City of New York" (emphasis added).

---

**2.** The titles of the derivative actions are: *Stotland v GAF Corp.* (Delaware Chancery Ct, New Castle County, Civ Action No. 6876); *Miller v GAF Corp.* (Delaware Chancery Ct, New Castle County, Civ Action No. 6795); *Weinberger v Werner* (Supreme Ct, NY County, Index No. 10403/83); *Heyman v GAF Corp.* (US Dist Ct, SDNY) (Civ Action No. 82-7442); and *Heyman v GAF Corp.* (US Dist Ct, SDNY) (Civ Action No. 83-2106).

In timely fashion, GAF moved to stay arbitration, upon the basis that the dispute about the employment agreement was only a small part of the controversy between the parties, which controversy is fully set forth in the consolidated action, and that the disposition of all of the issues in one court proceeding outweighs the public policy in favor of arbitration.

Also, prior to GAF commencing its consolidated action, Werner began his own court action against GAF to recover compensatory and punitive damages, in view of the fact that the new Board of GAF had refused to honor Werner's exercise of the stock option portion of the compensation package.

Now, after Werner's demand for arbitration and the institution of his action, GAF launched its consolidated court action. The two actions and the arbitration proceeding were all begun within two months of one another. These three matters are identified in the caption of this lawsuit in the following manner: action No. 1 is GAF's consolidated court action, proceeding No. 2 is GAF's application to stay arbitration, and action No. 3 is Werner's court action concerning the stock option.

Werner responded to GAF's petition to stay arbitration by cross-moving to, *inter alia,* compel arbitration. Furthermore, GAF cross-moved to, *inter alia,* consolidate for trial GAF's action with Werner's action.

Special Term, *inter alia,* (1) denied GAF's motion to stay arbitration; (2) granted Werner's cross motion to compel arbitration; (3) granted GAF's cross motion to consolidate the two actions; and, (4) *sua sponte* stayed the trial of the consolidated actions, only insofar as the issues that relate to the employment agreement which the arbitration proceeding is to consider. We disagree.

Even though GAF moved to stay arbitration under New York law (CPLR 7503, subd [b]), the instant arbitration is governed by the Federal Arbitration Act (US Code, tit 9, §§ 1, 2 *et seq.*) since the employment agreement affects interstate commerce. As mentioned *supra,* GAF is a Delaware corporation with a principal office in New York County, it has thousands of shareholders who live in various parts of the United States, and its business operations are carried on in interstate commerce. The Supreme Court of the United States recently held, unequivocably, that the Federal Arbitration Act preempts State law, when the subject contract affects interstate commerce (*Southland Corp. v Keating,* 465 US 1, 104 S Ct 852).

Although the United States Congress, by enacting the Federal Arbitration Act, has "declared a national policy favoring arbitration"[3] (*Southland Corp. v Keating, supra,* p __, p 858), there are instances when Federal courts will stay arbitration of one part of a controversy while another part of the controversy, not subject to arbitration, is permitted to proceed first in a judicial forum. Some examples of Federal courts staying arbitration, while allowing the court action to move forward, are: (1) in cases involving, *inter alia,* antitrust issues, which on public policy grounds have been held inappropriate for resolution by arbitration,[4] upon the basis that the antitrust issues so permeate the controversy that the arbitrator can "not easily separate the antitrust issues from the other arbitrable issues and [can] not easily decide the arbitrable issues without inquiry into the antitrust issues" (*Applied Digital Technology v Continental Cas. Co.,* 576 F2d 116, 118); (2) in cases involving, *inter alia,* Federal securities law issues, which are nonarbitrable under Federal law,[5] upon the basis "that when it is impractical if not impossible to separate out nonarbitrable federal securities law claims from arbitrable contract claims, a court should deny arbitration" (*Sibley v Tandy Corp.,* 543 F2d 540, 543, reh den 547 F2d 286, cert den 434 US 824), (3) in a case involving a property damage suit, where there was an arbitrable issue of the insurer's duty to defend, the arbitration of that issue was stayed while an issue of liability, which was not subject to arbitration, was allowed to go to trial, upon the basis that there was "the possibility of conflicting fact-finding" between the arbitrator and the court on the key issue of liability (*Petroleum Helicopters v Boeing-Vertol Co.,* 478 F Supp 84, 87, affd 606 F2d 114); and, (4) in a case involving a breach of contract, where the nonarbitrable claims far outnumbered the arbitrable ones, upon the basis that "[u]nder all the circumstances, the interests of the parties would best be served by staying the arbitration" (*Bell Canada v ITT Telecommunications Corp.,* 563 F Supp 636, 641).

Applying the legal concepts contained in these Federal cases, cited *supra,* to the facts of the instant case, which involves an action brought by a corporation, whose stock is publicly held by thousands of shareholders, we conclude that the interests of justice require that arbitration be stayed and the consolidated

---

**3.** New York State also has announced a policy that favors and encourages arbitration (*Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co.,* 37 NY2d 91, 95).

**4.** *American Safety Equip. Corp. v Maguire & Co.,* 391 F2d 821 (CA2d).

**5.** *Wilko v Swan,* 346 US 427.

actions be allowed to proceed to trial. We find the following factors significant in making our determination:

1. that the arbitrable issue of the employment agreement is only a minor part of the larger controversy involving nonarbitrable issues such as corporate waste, breach of fiduciary duties, mismanagement and issuing misleading information in the proxy contest;

2. that, if the arbitration is permitted to go forward, there is a strong danger that the arbitrators will be unable to separate the arbitrable issue of the employment agreement from the nonarbitrable issues and the result may be inconsistent fact finding between the arbitrators and the court on the nonarbitrable issues; and,

3. that the individual members of the old Board, who are defendants in the GAF consolidated action, are not parties to the arbitration and we are concerned that the arbitrators may make an award that may have collateral effect in the consolidated actions.

Werner argued that the court can only stay the arbitration if the ground for the stay is specifically set forth in CPLR 7503, otherwise, the court has no power to act. The courts have consistently held to the contrary. CPLR 2201 has been construed as permitting a stay to "avoid a multiplicity of suits, or * * * prevent litigation of an issue which should more appropriately be litigated in the other action" (2A Weinstein-Korn-Miller, NY Civ Prac, par 2201.03, p 22-11). Further, the court has specifically exercised its inherent power to stay an arbitration pending the trial of a related lawsuit (*Matter of Sun Rubber Co.* [*New York Credit Men's Adj. Bur.*], 278 App Div 933, affd 303 NY 961). Further, almost 50 years ago, Justice Cardozo wrote for a majority of the United States Supreme Court, in *Landis v North Amer. Co.* (299 US 248, 254-255): "[P]ower to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance". Our decision in the instant case meets this *Landis* test of maintaining an even balance, without prejudicing either party.

Accordingly, the order, Supreme Court, New York County (Martin Evans, J.), entered May 15, 1984, which, *inter alia,* (1) denied GAF's motion to stay arbitration, (2) granted Werner's cross motion to compel arbitration, (3) granted GAF's cross motion to consolidate the two court actions, and, (4) *sua sponte*

stayed the trial of the consolidated actions insofar as the issues related to the employment agreement which the arbitration proceeding is to consider, should be modified, on the law, the facts and in the exercise of discretion, to the extent of (1) granting the petition to stay arbitration; (2) denying the cross motion to compel arbitration; (3) vacating the stay of the trial of those issues pertaining to the employment agreement, and otherwise affirmed, with costs.

KUPFERMAN, J. P., CARRO and FEIN, JJ., concur.

Order, Supreme Court, New York County, entered on May 15, 1984, unanimously modified, on the law, the facts and in the exercise of discretion, to the extent of (1) granting the petition to stay arbitration; (2) denying the cross motion to compel arbitration; (3) vacating the stay of the trial of those issues pertaining to the employment agreement, and otherwise affirmed. Appellant shall recover of respondent $50 costs and disbursements of this appeal.